UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEAN LAFITTE CONDOMINIUM, LLC | CIVIL ACTION |
| VERSUS | NO. 23-3415 |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, ET AL. | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is defendants Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622021 ("Certain Underwriters") and Independent Specialty Insurance Company's unopposed motion to compel arbitration and stay the proceedings or, alternatively, to dismiss the action.[1] For the following reasons, the Court grants in part and denies in part the motion.

## I. BACKGROUND

Plaintiff is the owner of commercial property in Lafitte, Louisiana, that was allegedly damaged during Hurricane Ida on August 29, 2021.[2] At the time of the hurricane, the property was insured by defendants under a

---

[1]   R. Doc. 14.
[2]   R. Doc. 2-1 ¶ 5.

surplus lines insurance policy.[3] Plaintiff alleges that defendants failed to make appropriate payments pursuant to the policy, and asserts causes of action for breach of the insurance contract and breach of the duty of good faith and fair dealing.[4] Defendants removed the action to this Court, invoking federal-question jurisdiction because the subject matter of the action relates to an arbitration agreement enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention") and the Federal Arbitration Act ("FAA").[5] On September 8, 2023, Magistrate Judge Karen Roby granted defendants' motion to opt-out of the Court's Streamlined Settlement Program.[6]

Defendants now move to compel arbitration and to stay proceedings pending arbitration.[7] Defendants contend that arbitration is mandated under the following provision within the insurance policy:[8]

> All matters in difference between an insured and the Insurer (hereinafter referred to as "the Parties") in relation to this insurance, including its formation, validity, and the arbitrability of any dispute, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the

---

[3] *Id.* ¶ 6. *See generally* R. Doc. 2-2.
[4] R. Doc. 2-1 ¶¶ 23-34.
[5] R. Doc. 2. *See also* 9 U.S.C. § 205 (providing for removal of actions when the subject matter "relates to an arbitration agreement or award falling under the Convention").
[6] R. Doc. 12.
[7] R. Doc. 14.
[8] R. Doc. 2-2 at 37.

2

manner hereinafter set forth. This Arbitration Clause applies to all persons or entities claiming that they are entitled to any sums under the policy.

The arbitration provision further states that "[t]he seat of the Arbitration shall be in New York, unless some other location is agreed to by the Parties and the Arbitration Tribunal," and that the "Arbitration Tribunal shall apply the law of New York when resolving all matters in difference between the Parties, regardless of the location of the Arbitration."9 Plaintiff does not oppose the motion.

The Court considers the motion below.

## II. LAW AND ANALYSIS

### A. Arbitration under the New York Convention

The New York Convention is an international treaty that provides citizens of the signatory countries with the right to enforce arbitration agreements. The purpose of the Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974). The FAA,

---

9    *Id.* at 38.

3

U.S.C. §§ 201-208, codifies the Convention and provides for its enforcement in United States courts. *See* 9 U.S.C. § 201 ("The [New York Convention] shall be enforced in United States courts in accordance with this chapter."); *see also id.* § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). "[A] court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; '(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'" *Id.* (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 274 (5th Cir. 2002)). Once these factors have been found to exist, a court must order arbitration "unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." *Id.* (citation and internal quotation marks omitted).

All four requirements are satisfied in this case. First, the insurance contract contains a written agreement to submit "[a]ll matters" in dispute relating to the insurance policy to arbitration.[10] Second, the agreement provides for arbitration in a signatory nation, namely the United States, and specifically in New York.[11] Third, the arbitration agreement arises out of a commercial legal relationship through the contract of insurance between plaintiff and defendants. *See* 9 U.S.C. § 202 (defining a commercial legal relationship as "including a transaction, contract, or agreement described in section 2 of [Title 9]"). And finally, at least one party to the agreement is not a citizen of the United States, as multiple subscribing underwriters at Certain Underwriters are syndicates that are citizens of England and Wales.[12] No party contests the applicability of the Convention to the arbitration agreement. The Court therefore finds that the arbitration agreement falls

---

[10]  *Id.* at 37.
[11]  *Id.* at 38.
[12]  Defendants assert in their motion that two entities, RenaissanceRe Corporate Capital (UK) Limited ("RenRe U.K.") and RenaissanceRe Specialty U.S. Limited ("RenRe U.S.") are foreign corporate entities that subscribed to the policy and participated in the risk through Lloyd's market. R. Doc. 14-1 at 3. RenRe U.K. is a private limited company incorporated under the laws of England and Wales with its principal place of business in England and Wales, and RenRe U.S. is a private limited company incorporated under the laws of Bermuda, a territory of England and Wales, with its principal place of business in Bermuda. R. Docs. 14-4 & 14-5.

5

under the Convention. Accordingly, the Court must order arbitration unless it finds the agreement in the insurance policy is null and void, inoperative, or incapable of being performed. *Freudensprung*, 379 F.3d at 339.

The "null and void" defense, which is set forth in Article II(3) of the Convention, "limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses," such as fraud, mistake, duress, and waiver. *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 79-80 (5th Cir. 2000). "In light of the strong presumption favoring arbitration, 'a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity.'" *1010 Common, L.L.C. v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 WL 7342752, at *9 (E.D. La. Dec. 14, 2020) (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)); *see also Freudensprung*, 379 F.3d at 341 ("Under the FAA, a written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." (citation and internal quotation marks omitted)). Here, plaintiff does not oppose defendants' motion for arbitration or challenge the validity of the arbitration clause. Thus, the Court finds the arbitration agreement to be valid.

Finally, in assessing whether the parties agreed to arbitrate the dispute in question, courts generally must ask "whether the dispute in question falls within the scope of that arbitration agreement.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 418-19 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).  Here, defendants contend that the "scope" inquiry should be left to the arbitration panel, not the Court, because the arbitration agreement includes a broad delegation clause that requires "[a]ll matters in difference," including those relating to the "arbitrability of any dispute," to be resolved by arbitration.[13]  The Supreme Court has recognized that parties "can agree to arbitrate 'gateway' questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) (recognizing that the FAA "allows parties to agree by contract that an arbitrator, rather than the court, will resolve threshold arbitrability questions as well as underlying merits disputes" (citations omitted)).  Moreover, the Fifth Circuit has found that a similar arbitration agreement, which required the parties to submit "any dispute or difference between the parties" to arbitration in New York, was "extremely broad," and

---

13   R. Doc. 2-2 at 37; R. Doc. 14-1.

7

"encompasse[d] substantially all of the potential controversies growing out of" the underlying claim. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140, 1145, 1150 (5th Cir. 1985). Given the broad scope of the arbitration clause, the Fifth Circuit held that arbitrators, rather than the court, "should initially determine which of the intricate factual disputes come within the arbitration clause." *Id.* at 1150 ("Although in some situations we have stated that the court should first determine whether, and what, issues are for arbitration, we think that given the broad framework of the arbitration clause in this situation, the arbitrators should initially determine which of the intricate factual disputes come within the arbitration clause."). Accordingly, this Court finds that whether the dispute falls within the scope of the broad arbitration agreement is properly addressed by the arbitration panel.

### B. Stay or Dismissal Pending Arbitration

Having found that plaintiff's claims must be submitted to arbitration, the Court must now determine whether to dismiss or stay the action pending arbitration. Section 3 of the FAA provides that, when claims are properly referable to arbitration, the Court "shall[,] on application of one of the parties[,] stay the trial of the action until such arbitration has been had in

8

accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Here, defendants have applied for a stay pending arbitration, and such a stay is mandatory under section 3. Although defendants sought dismissal in the alternative, dismissal is discretionary, not mandatory. *See Apache Bohai Corp. LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003); *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) ("[D]istrict courts have discretion to dismiss cases in favor of arbitration."). Because defendants have not explained why dismissal, rather than a stay, is warranted, the Court declines to exercise its discretion to dismiss the matter.

B.  **CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendants' motion.  The Court GRANTS defendants' request to compel arbitration and stay the proceeding pending arbitration.  Accordingly, it is ORDERED that the matter is STAYED and ADMINISTRATIVELY CLOSED pending arbitration.  The Court DENIES defendants' request to dismiss plaintiff's claims against them.

New Orleans, Louisiana, this __14th__ day of November, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE